IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TODD M. WEICHEL,

                        Plaintiff,                OPINION AND ORDER

    v.

                                          07-cv-701-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Todd M. Weichel seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the decision of the administrative law judge who denied his claim is not supported by substantial evidence because the judge improperly assessed plaintiff's credibility, improperly rejected the opinion of plaintiff's treating physician and erred in determining his residual functional capacity.

1

I find that the administrative law judge properly assessed plaintiff's credibility and determined his residual functional capacity.  I also find that the administrative law judge gave good reasons for rejecting the opinion of plaintiff's treating physician that she could not work and that there is substantial evidence in the record to support his decision.  For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A. <u>Background and Procedural History</u>

Plaintiff was born on December 21, 1962.  AR 104.  He received his General Education Diploma in 1990 and has past relevant work as a bartender, machine operator and laborer.  AR 17, 19.

Plaintiff applied for Social Security Disability Benefits and Supplemental Security Income on July 30, 2004, alleging disability since June 1, 2001 because of diabetes mellitus, chronic pancreatitis and back pain.  AR 66.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on December 4, 2006 before Administrative Law Judge David Gatto in Eau Claire, Wisconsin.  AR 401.  At the hearing, plaintiff amended his alleged disability onset date to

2

August 4, 2004.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer.  He also heard testimony from a neutral medical expert and a neutral vocational expert.   AR 401-28.  On March 13, 2007, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 12-23.  The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on October10, 2007.  AR 6-9.

B.  Medical Evidence

On November 15, 2002, plaintiff was admitted to the hospital by his physician, Dr. Deborah Hower, for complaints of abdominal pain.  A computed tomography scan indicated that plaintiff had acute and chronic pancreatitis.  He was discharged on November 18, 2002 by Dr. Steven D. Weiss, who diagnosed him with acute and chronic pancreatitis and pseudocyst, poor exocrine pancreatic function with chronic diarrhea, Type 1 diabetes mellitus secondary to chronic pancreatitis and a history of alcoholism with a past history of delirium tremens.  Dr. Weiss recommended that plaintiff follow a low fat, carbohydrate-controlled diet.  AR 135.  On November 20, 2002, plaintiff was seen again for abdominal pain by Dr. Hower, who recommended that plaintiff be hospitalized.  Plaintiff refused because he was concerned about returning to work.  AR 206.

Plaintiff dislocated his shoulder at work on December 26, 2003 and reinjured it on January 6, 2004. AR 145-46, 150. On April 3, 2004, plaintiff reported to the emergency room with abdominal pain. After he was given two doses of intravenous narcotic pain medication, he pulled out the intravenous needle and left the emergency room. He later reported that he had decided to leave because he was nervous about being there. AR 162. The emergency room doctor indicated that he believed plaintiff was exhibiting drug seeking behavior and falsifying his symptoms. AR 157-58. A short time later, however, plaintiff returned to the emergency room and was admitted overnight for a small bowel obstruction. AR 159-61.

On April 22, 2004, plaintiff saw Dr. Hower and reported that he was feeling much better and that his pain was well-controlled. He was receiving Vicodin through the pain clinic. Dr. Hower noted that plaintiff said that his blood sugars were well controlled. Plaintiff reported having problems receiving medical care at the free clinic because of a conflict with the manager but stated that he was going to try to get his medications at another free clinic. AR 179.

On July 29, 2004, plaintiff saw Dr. Hower but refused medical testing because of his financial situation. Plaintiff reported that he was working six-hour shifts but that the pain made it difficult. Dr. Hower noted that plaintiff did not check his blood sugars but that he said he would go to the free clinic to see if he could get some free test strips. AR 175-76.

4

On August 1, 2004, plaintiff was seen by Dr. Michael Hartman for right hand numbness and weakness.  Dr. Hartman diagnosed plaintiff with right radial nerve palsy and referred him to a specialist.  AR 237.  On August 22, 2004, plaintiff was seen in the emergency room for back strain after being involved in a motor vehicle accident.  AR 233.  X-rays showed no abnormality other than some chronic mid cervical degenerative change.  AR 235.

On September 16, 2004, Dr. Hower wrote a letter on plaintiff's behalf recommending that he be evaluated for disability benefits.  She stated that although plaintiff was working six-hour shifts, his chronic abdominal pain made working difficult.  She noted that in addition to chronic pain, plaintiff had limited fluid and food intake and diabetes.  AR 340.

On October 10, 2004, plaintiff was seen in the emergency room for abdominal pain.  A computed tomography scan showed no obstruction but revealed some dilated loops of the small bowel.  Plaintiff was diagnosed with acute abdominal pain, etiology unclear, and a history of chronic pancreatitis.  AR 240-21.  On November 9, 2004, plaintiff was seen again at the emergency room for abdominal pain.  Plaintiff was given a shot of morphine and discharged.  AR 252-53.  That same day plaintiff was seen by Dr. Hunt at Urgent Care who gave him samples of Ultracet, a narcotic pain medication.

On November 12, 2004, plaintiff went to the Riverview Clinic and asked physician assistant Chau Nguyen for a refill of his Vicodin prescription because his girlfriend had taken

his pills when she moved out.  Plaintiff reported that he had been recently evaluated by Dr. Endres at the pain clinic.  Plaintiff also reported that because he had lost his Vicodin prescription three times, the pain clinic would no longer treat him.  Nguyen told plaintiff that she did not prescribe narcotics and gave him a prescription for Ultram.  AR 264-65.

Six days later, on November 18, 2004, plaintiff saw Dr. Brandon Parkhurst at the Riverview Clinic for abdominal pain.  Dr. Parkhurst wrote that he spent the majority of the appointment explaining why he would not prescribe Vicodin for plaintiff.  Dr. Parkhurst noted that because plaintiff had been discharged from the pain clinic, he felt uncomfortable continuing plaintiff's Vicodin prescription.  Dr. Parkhurst suspected that plaintiff was not suffering from chronic pancreatitis because of the lack of objective findings supporting his complaints of intractable pain.  Plaintiff declined a prescription for Ultram because of its cost and ineffectiveness.  He also declined a referral to a gastroenterologist.  AR 262-63.

On January 28, 2005, plaintiff saw Dr. Hower and requested a prescription for Vicodin.  He reported that he had been discharged from the pain clinic because he had lost his Vicodin prescriptions three times.  Dr. Hower decided to give him a one-month Vicodin prescription but told him he would have to submit to random drug screening and see her once a month.  Dr. Hower was concerned about plaintiff's chronic pancreatitis and diabetes.  She advised plaintiff that he needed to stop drinking six Cokes a day because it was increasing his abdominal pain and elevating his blood sugars.  She also noted that plaintiff

did not have a job, which made it difficult for him to afford insulin and strips to test his blood sugars.  AR 336.

A February 4, 2005 computed tomography scan of plaintiff's abdomen showed evidence of chronic pancreatitis but no evidence of acute pancreatitis.  The scan also showed no discrete masses or changes from the scan performed in October 2004.  AR 347.  On February 25, 2005, Dr. Hower explained the results of the computed tomography scan to plaintiff and gave him a one-month prescription for Vicodin.  AR 339.

Plaintiff saw Dr. Hower on March 31, 2005 for severe pain and nausea.  She determined that he was suffering from viral gastroenteritis.  AR 323.  In April 2005, plaintiff started working at Hutchinson Technology.  When he saw Dr. Hower on April 29, 2005, plaintiff reported that he was having no problems with his pancreatitis.  He also reported that although he was working, he could not afford test strips to test his blood sugar.  AR 321. On May 20, 2005, plaintiff called Dr. Hower asking for a refill of his Vicodin prescription. Because plaintiff's urine test had been negative for opiates, Dr. Hower was not sure that he was taking the Vicodin and she refused to refill the prescription.  However, plaintiff convinced Dr. Hower that he was taking the Vicodin and she refilled the prescription.  AR 319-20.

On August 17, 2005, plaintiff reported to Dr. Hower that he did not have health insurance, that he was not checking his blood sugars regularly and was having hypoglycemic

episodes at work.  Dr. Hower could not adjust his insulin because he had not brought his glucometer or any results of blood sugar testing.  AR 313.

On September 9, 2005, plaintiff went to the emergency room because he had high blood sugar.  He was concerned that his poorly controlled diabetes was affecting his abilities at work and he was seeking documentation for his condition.  Dr. Michael Hartman examined him and found that plaintiff had no edema or neurological deficits caused by diabetes.  AR 292.

On October 13, 2005, plaintiff saw Dr. Hower, who referred him for diabetic education because of her concern that plaintiff's diabetes was not controlled.  Dr. Hower advised plaintiff that he should stop smoking.  She also suggested that if he stopped smoking, he would have money to buy the strips to test his blood sugar.  AR 308.  When plaintiff returned to see Dr. Hower on December 14, 2005, he was testing his blood sugars and had improved his diet.  However, she noted that plaintiff continued to smoke and that he was unable to keep his job because of hypoglycemia and recurrent abdominal pain.  Dr. Hower noted that she believed plaintiff should apply for disability.  AR 305.

When plaintiff saw Dr. Hower on March 23, 2006, he reported that he had lost his job and could not afford strips to test his blood sugars.  Plaintiff reported that he had had an episode of severe pancreatitis but did not go to the emergency room because he could not afford it.  Dr. Hower described his chronic pancreatitis as recurrent, with intermittent pain

and his diabetes as poorly controlled.  Dr. Hower wrote that she was able to get some test strips from the clinic for plaintiff to use.  Dr. Hower stated that with plaintiff's chronic pancreatitis, he was a good candidate for disability.  She wrote: "I think it is very hard for this patient to work with his type 1 diabetes and not being able to eat regularly with his chronic pancreatitis and having chronic pain."  AR 303.

On March 24, 2006, plaintiff was seen by Licensed Practical Nurse Catherine A. Schulte for diabetic education.  He reported that he was testing his blood sugars only twice a week even though he received 30 free test strips a month.  Plaintiff also reported that he did not follow a diet plan but bought cheddarwurst and usually ate six of them with bread and butter a day.  AR 302.

On May 18, 2006, plaintiff returned to see Dr. Hower and reported that he had trouble paying for his medications and test strips.  Dr. Hower believed plaintiff's statement that he was not selling Vicodin and renewed his prescription.  AR 299.  Plaintiff was taking five Vicodin a day.  AR 300.  Plaintiff reported that he was checking his blood sugars with the free test strips.  However, when plaintiff thought his blood sugar was low he did not test his blood sugars to see whether he was correct but just ate something.  Dr. Hower noted that plaintiff was overeating for hypoglycemia, explained to him why this was not a good strategy for controlling diabetes and referred him for diabetic education.  AR 299.  Dr. Hower wrote

that she was impressed that plaintiff was checking his blood sugars regularly and had a desire to control his diabetes.  AR 302.

On June 8, 2006, plaintiff tested positive for opioids, which indicated that he was taking his medication and not selling it to others.  AR 298.  On June 8, 2006, plaintiff was seen in the diabetes education clinic and reported that he was eating cheddarwurst sausage with bread, occasionally chicken or a cheeseburger, some spaghetti and macaroni and cheese.  AR 334.  On June 15, 2006 and August 9, 2006, Dr. Hower refilled plaintiff's Vicodin prescription.  AR 296-97.  On September 6, 2006, Dr. Hower was advised by business services that she was no longer able to provide services to plaintiff because he was not paying his bill.  AR 295.  On September 18, 2006, plaintiff was treated at the Marshfield Clinic Oakwood Center.  AR 371.

On November 24, 2006, Dr. Hower completed a treating source questionnaire.  She indicated that she had treated plaintiff from November 20, 2002 to September 2006 for Type 1 diabetes and chronic pancreatitis.  She wrote that plaintiff's limiting symptom of his chronic pancreatitis was the chronic abdominal pain that affected what he ate and drank.  She added that this made it very difficult for him to maintain a normal blood sugar when taking insulin.  AR 376.  She further noted that his variable blood sugars could cause him to suffer hypoglycemic episodes, which put him in danger and interfere with his thought processes, and that his chronic pain limits his ability to concentrate and stay on task.  She

10

noted that plaintiff often needs to lie down and rest.  AR 377.  Dr. Hower wrote that plaintiff was very credible and that his complaints of disabling pain were consistent with the medical evidence.  AR 377-78.  She wrote that plaintiff could not work without frequent absences because he suffers frequent hyperglycemia and hypoglycemia, abdominal pain, nausea and vomiting.  AR 378.

## C.  Consulting Physicians

On October 22, 2004, Dr. Pat Chan, a state agency consulting physician, completed a physical residual functional capacity assessment for plaintiff, noting that plaintiff had been diagnosed with pancreatitis, diabetes, right hand pain and left shoulder pain.  He concluded that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk six hours in an eight-hour day, sit six hours in an eight-hour day and perform limited pushing and pulling with his upper extremities because of a history of right hand and left shoulder pain.  AR 270-277.  This assessment was affirmed by state agency consulting physician Dr. Michael Baumblatt on February 25, 2005.  AR 277.

On October 21, 2004, Dr. Jack Spear, a state agency consulting psychologist, completed a psychiatric review technique form for plaintiff.  He found that plaintiff had no severe mental impairment but had a history of alcohol abuse.  He indicated that plaintiff

11

would have only a mild degree of limitation in his ability to function.  AR 278-89.  On March 1, 2005, a state agency medical consultant affirmed this assessment.  AR 278.

### D. Hearing Testimony

At the hearing, plaintiff testified that he had a General Education Diploma and had worked full-time as a machine operator at Hutchinson Technology for five months in 2005. AR 410.  He testified that he was terminated from that job because his variable blood sugar levels and chronic pain caused him to miss work.  He explained that he missed work at least once a month and had to take unscheduled breaks two to three times during his shift.  AR 411-12.  Plaintiff testified that he had been let go as a bartender at Nelson's Barstow Tap in August 2004 because of lack of business.  AR 412.  He also testified that he worked for his brother's carpet laying company up to three days a month helping carry in rolls of carpet but that he had not worked for the company for the three or four months prior to the hearing.  AR 414-15.

Plaintiff testified that he lived with his girlfriend who was on disability because of her back.  He testified that he spent the day in bed or watching television but he took a drive to the park once in awhile.  AR 415.  Plaintiff said that he took the garbage out once a week, changed the cat litter and helped his girlfriend shop for groceries.  AR 416.

Plaintiff testified that he took insulin but that his blood sugars varied.  He stated that when his blood sugar was too high, he vomited, had severe headaches and could not think clearly.  AR 416.  He also testified that he took hydrocodone for the pain caused by pancreatitis but that sometimes the pain was so bad he curled up on his bed in a fetal position. AR 417.  Plaintiff described the pain as a really sharp consistent pain that occurred on a daily basis and increased with activity.  AR 419.  His diet had not changed in the last few years except that it is more difficult for him to eat because of the pain.  AR 419. Plaintiff testified that if he received disability benefits, he would be able to see doctors more regularly, test his sugars regularly and change his eating habits.  AR 422.

After having reviewed plaintiff's medical records, Dr. Andrew Steiner testified as a neutral medical expert.  AR 405.  He stated that plaintiff had been diagnosed with diabetes for at least eight years, which was secondary to chronic pancreatitis and chronic pain syndrome.  Steiner indicated that computed tomography scans since 2002 showed that plaintiff had chronic pancreatitis rather than acute pancreatitis.  He also testified that although there was evidence that plaintiff had left shoulder dislocation and neck osteoarthritis, he was not limited by these conditions.  AR 406.  Steiner stated that plaintiff did not have an impairment that met or equaled a listed impairment.  He further testified that plaintiff could perform sedentary work with occasional overhead work.  AR 407.

13

In response to questioning by plaintiff's lawyer, Dr. Steiner testified that as a rule chronic pancreatitis cannot cause severe pain on a regular basis but can cause nausea, vomiting, bloating and gas. AR 408. He also testified that it can cause oily loose stools because of poor digestion and malabsorption of nutrients, especially fats. Plaintiff's attorney asked Dr. Steiner whether in his experience as a treating physician, several equally truthful patients with the same diagnoses and same objective findings could self-report symptoms with a wide range of severity. Steiner responded that they could. AR 409.

Richard Willette testified as a neutral vocational expert. AR 422. The administrative law judge asked Willette whether an individual could perform plaintiff's past work if the individual had diabetes mellitus, chronic pancreatitis, irritable bowel syndrome, chronic pain syndrome and a history of left shoulder dislocations and alcohol abuse who could perform sedentary unskilled work as defined by the Dictionary of Occupational Titles with occasional overhead reaching with the left arm, bending, twisting and stooping and no exposure to heights or dangerous machinery. Willette testified that the individual could not perform plaintiff's past work but could perform 15,900 table worker jobs (739.687-182), 15,920 stuffer jobs (731.685-014) and 10,260 optical assembler jobs (713.687-018). The administrative law judge asked Willette whether an individual who required three additional unscheduled breaks of unspecified duration in addition to the normal standard breaks in sedentary unskilled work would be able to perform these jobs and he responded no. AR 424-

14

26.  The administrative law judge asked Willette whether his testimony was consistent with the <u>Dictionary of Occupational Titles</u> and he said that it was.

## E.  <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity since August 4, 2004, the alleged onset date of plaintiff's disability.  AR 167.  At step two, the administrative law judge found that plaintiff had severe impairments of diabetes mellitus, history of left shoulder dislocation, pancreatitis, chronic pain syndrome and history of alcohol abuse, but he held that plaintiff's irritable bowel syndrome, right hand pain and osteoarthritis of the cervical spin were not severe impairments.  AR 17.  Relying on the medical expert's testimony, the administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 18.

At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform a range of sedentary exertional activities with the ability to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; stand and walk up to two hours in an eight-hour day; sit up to six hours in an eight-hour day;

and occasionally reach overhead with his left arm, bend, stoop and twist.  AR 18.  Although the state agency physicians found that plaintiff could perform light work, the administrative law judge agreed with the medical expert that plaintiff could perform only sedentary work.

In determining plaintiff's residual functional capacity, the administrative law judge considered Dr. Hower's statement that plaintiff's chronic pain would result in frequent absences from any full time position.  He found that her opinion was not supported by the overall medical evidence of record, noting that plaintiff's physical examinations  revealed essentially normal findings.  He stated that plaintiff's non-compliance with his medications and improvement with recent compliance were documented in the record.  He noted that in September 2005, plaintiff was seen in the emergency room for high blood sugars, but in December 2005, his condition had improved because he was testing his blood sugars and improving his diet.  The administrative law judge noted that Dr. Hower had indicated that plaintiff's lack of medical insurance was a factor in his non-compliance with treatment.  The administrative law judge referred to medical reports from the pain clinic from November 11 and November 18, 2004 to the effect that the pain clinic would not recommend narcotic medication for plaintiff.  AR 20.  He also found that the treatment notes in the record indicated that plaintiff had only mild to moderate functional limitations.  Instead, the administrative law judge gave more weight to the opinions of the state agency medical

consultants and the medical expert than to the opinion of Dr. Hower because he found their opinions to be more consistent with the record.  AR 21.

In addition, the administrative law judge found that plaintiff's self-reports of the intensity, persistence and limiting effects of his symptoms were not entirely credible.  The administrative law judge stated:

> While the record supports some of the claimant's complaints, there are no findings to support the claimant's allegations of total disability.  Other than Dr. Hower's recent opinion, no treating or consulting physician has opined that the claimant was incapable of performing work activities on a sustained basis.

AR 21.  He also noted that plaintiff's non-compliance with his medications and improvement with recent compliance was documented in the record.  AR 21.

The administrative law judge found that plaintiff's reported daily activities were not indicative of total disability.  He noted that plaintiff shared household chores with his girlfriend, had worked several part-time jobs and had been let go from one job because of lack of business and not his inability to work.  The administrative law judge concluded:

> The claimant's prior work record, as evidenced by his earnings history, is insufficient to support an inference of disability from the fact that he is not working full-time.  I find that the claimant is less than credible; however, in giving the claimant the benefit of the doubt I shall factor in some of the claimant's reported functional limitations into his RFC.

17

AR 21.

At step five, the administrative law judge found that plaintiff was not able to perform his past work as bartender, laborer or machine operator but could perform jobs that existed in the local economy, namely table worker, stuffer and optical assembler.  In reaching this conclusion, the judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles.  AR 22-23.

OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on

18

the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

B.  Credibility

Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments: 1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the plaintiff's statements regarding his symptoms solely on the ground that the statements are not substantiated by

19

objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility

20

determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

In assessing plaintiff's credibility, the administrative law judge found that there were no findings in the record to support the plaintiff's allegations of total disability.  He stated that other than Dr. Hower's recent opinion, no treating or consulting physician had concluded that plaintiff was incapable of working.  The evidence of record supports this conclusion.  The state agency consulting physicians found that plaintiff could perform work that required frequently lifting 10 pounds, occasionally lifting 20 pounds, standing and walking six hours in an eight-hour day and sitting six hours in an eight-hour day with limited pushing and pulling of his upper extremities.  Dr. Steiner testified that plaintiff could perform sedentary work with occasional overhead work.  This evidence is not consistent with plaintiff's testimony that he would have to miss work once a month and take two or three unscheduled breaks.  Further, plaintiff's February 4, 2005 and October 2004 computed tomography scans showed no evidence of acute pancreatitis and no discrete masses.

The administrative law judge also pointed out that plaintiff did not regularly comply with recommended treatment.  Although plaintiff was referred for diabetic education several times, he did not regularly comply with a diet plan or testing his blood sugars.  In fact, plaintiff was eating food and drinking beverages that he had been advised were not good for

his chronic pancreatitis and diabetes, namely fats, carbohydrates and sugary soft drinks.  At

the hearing, plaintiff admitted that his diet had not changed in the past few years.

Contrary to plaintiff's assertions, under SSR 96-7p, noncompliance is a factor bearing

on credibility:

> [An] individual's statements may be less credible
> if . . . records show that the individual is not
> following the treatment as prescribed and there
> are no good reasons for this failure.  However, the
> adjudicator must not draw any inferences about
> an individual's symptoms and their functional
> effects from a failure to seek or pursue regular
> medical treatment without first considering any
> explanations that the individual may provide, or
> other information in the case record, that may
> explain infrequent or irregular medical visits or
> failure to seek medical treatment.

61 Fed. Reg. 34483-01 (1996).

Plaintiff asserts that he did not comply with treatment for his diabetes because of his lack

of financial resources and health insurance.  The administrative law judge recognized in his

decision that plaintiff had told Dr. Hower that he could not afford test strips to test his

blood sugars.  However, the administrative law judge did not err in rejecting this explanation.

There is substantial evidence to support the administrative law judge's finding that plaintiff's

lack of financial resources was not the sole reason for his failure to comply with treatment.

According to Dr. Hower's treatment notes, plaintiff was able to pay for several soft drinks

22

and cheddarwurst, cigarettes, regular visits to Dr. Hower and his prescriptions for Vicodin. Dr. Hower suggested that if plaintiff quit smoking he would be able to afford test strips. When plaintiff had access to free medical care and supplies, he failed to use them. On March 24, 2006, plaintiff reported that he was testing his blood sugar only twice a week although he received 30 free test strips a month. Further, although he was able to get free strips to test his blood sugar from a free clinic, he refused to return because of a confrontation. It was reasonable for the administrative law judge to conclude that plaintiff's failure to comply with treatment was not solely because of his lack of financial resources or health insurance and to consider plaintiff's non-compliance with treatment in assessing his credibility.

Plaintiff also argues that the administrative law judge erred in not using the testimony of Dr. Steiner to find that plaintiff's complaints of his symptoms were credible. Steiner testified that equally truthful patients with the same diagnoses and objective medical findings could have different subjective complaints. This testimony does not establish that plaintiff's specific complaints were credible.

In addition to the objective medical evidence, the administrative law judge considered the other factors set forth in Social Security Ruling 96-7p. The administrative law judge noted plaintiff's testimony that he spent the day in bed, watched television, took an occasional drive to the park, took the garbage out once a week, changed the cat litter and

23

helped his girlfriend shop for groceries.  Although these daily activities do not establish that plaintiff is able to sustain regular work activity, the administrative law judge also considered plaintiff's part-time work activities as a bartender and carrying carpet and his full-time work as a machine laborer.  <u>Berger v. Astrue</u>, 516 F.3d 539, 546 (7th Cir. 2008)(upholding an administrative law judge's credibility finding that claimant's ability to perform part-time carpentry work cut against his allegations of total disability).  Considering all of these activities, the administrative law judge reasonably concluded that plaintiff's allegation of total disability was not credible.

Although the administrative law judge addressed plaintiff's narcotic use only summarily, there is evidence that plaintiff exhibited drug seeking behavior.  The pain clinic discontinued treating plaintiff because he reported losing his Vicodin prescription three times.  On one occasion, plaintiff sought additional Vicodin because his girlfriend had allegedly taken his prescription.  Although Dr. Hower ultimately prescribed Vicodin for plaintiff, she questioned plaintiff's use and placed conditions on giving him prescriptions. She gave him only a month's supply at a time and tested him to see if he was actually taking the drug.  Most of the tests showed that he was taking the Vicodin.  In addition, plaintiff attempted to obtain narcotic medication at the emergency room on several occasions.  On April 3, 2004, an emergency room doctor indicated that he believed plaintiff was exhibiting drug seeking behavior.  On November 9, 2004, plaintiff received a shot of morphine in the

24

emergency room after complaining of abdominal pain.  About a week later, Dr. Parkhurst saw plaintiff for abdominal pain and refused to prescribe Vicodin for him.  From this evidence the administrative law judge could reasonably conclude that plaintiff may have been exaggerating his need for pain medication.

In sum, plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.  The administrative law judge was not patently wrong.  He built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements concerning his limitations were not persuasive.

## C.  Opinion of Treating Physician

Plaintiff contends that the administrative law judge erroneously rejected Dr. Hower's opinion that he could not work because of frequent absences.  Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

25

When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole and other factors.   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion.  Id.  He also must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The administrative law judge rejected Dr. Hower's opinion and relied instead on that of Dr. Steiner and the state agency physicians.  Plaintiff contends that because Dr. Steiner did not offer an opinion on plaintiff's ability to perform work activities on a sustained basis, his opinion did not contradict Dr. Hower's.  White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005)(rejection of a treating physician opinion where inconsistent with opinions of medical expert and state agency medical consultants and at least partially inconsistent with the conclusions of several other physicians);  Gudgel v. Barnhart, 345 F. 3d 467, 470 (7th Cir. 2003)(contradictory opinion of non-examining physician does not by itself suffice to provide the evidence necessary to reject a treating physician's opinion).  However, Dr. Steiner

testified that plaintiff retained the residual functional capacity to perform sedentary work with occasional overhead work.  The definition of residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R.. pt. 404, Subpt. P, App 2 § 200.00(c). Therefore, Dr. Steiner did conclude that plaintiff could perform sustained work.

Plaintiff also argues that because the state agency consulting physicians did not review Hower's November 24, 2008 opinion, the administrative law judge erred in finding their opinions inconsistent.  However, when the consulting physicians assessed plaintiff on October 22, 2004 and February 25, 2005, they reviewed Dr. Hower's treatment notes and her September 16, 2004 letter concerning her opinion that plaintiff should be evaluated for disability.  They disagreed with Dr. Howe's conclusion.  The physicians could not have considered the 2006 questionnaire, which Dr. Hower completed after their assessments.

Dr. Hower's opinion was not consistent with the opinions of other doctors who examined plaintiff.  On April 3, 2004, an emergency room doctor indicated that he believed plaintiff was exhibiting drug seeking behavior and falsifying his symptoms.  Doctors at the pain clinic refused to give plaintiff Vicodin or any narcotic medication in November 2004. When Dr. Parkhurst saw plaintiff at the Riverview Clinic on November 18, 2004,  he did not believe that plaintiff was suffering from chronic pancreatitis given the absence of objective findings supporting his complaints of intractable pain.   When plaintiff was

27

examined in the emergency room on September 9, 2005, Dr. Hartman found no edema nor neurological deficits caused by his diabetes.

The administrative law judge stated other good reasons for rejecting Dr. Hower's opinion.   He noted that Dr. Hower's own treatment notes are not consistent with her opinion that plaintiff could not work.   On April 22, 2004, plaintiff reported he was feeling better and that his pain was well-controlled.   Dr. Hower noted that plaintiff's blood sugars were well controlled.   On April 29, 2005, plaintiff was working and having no problems with his pancreatitis.   Dr. Howere also noted that plaintiff's diabetes had improved on December 14, 2005 because plaintiff was testing his blood sugars and had improved his diet.   Plaintiff's condition worsened when he failed to follow doctors' advice

Dr. Hower's opinion that plaintiff could not work because of his frequent absences is not supported by her comments on the treating source questionnaire that she completed. Dr. Hower stated that plaintiff's chronic abdominal pain affected what he ate and drank and in turn affected his ability to maintain his blood sugars.   Although these symptoms might support unscheduled breaks or eating at his work site, Dr. Hower makes no connection between these symptoms and her opinion that plaintiff could not work because of frequent absences.

The administrative law judge did not address Dr. Hower's sympathy towards plaintiff but this factor also supports the administrative law judge's decision to reject her opinion.

28

Dixon v. Massinari, 270 F.3d 1171, 1177 (7th Cir. 2001) (treating physician rule takes into account the biases that a treating physician may develop such as friendship with the patient). Dr. Hower's 2002 to 2006 treatment notes suggest that she was sympathetic to plaintiff. She was the only doctor to prescribe narcotics, even though she was somewhat reluctant to do so and refilled his prescriptions only one month at a time.  Although Dr. Hower believed plaintiff was not selling his Vicodin, the pain clinic's decision not to continue treating plaintiff with Vicodin suggests that the doctors in that clinic had concerns that plaintiff was selling or abusing Vicodin after he reported that he had lost his prescription three times. Emergency room physicians also questioned plaintiff's need for the amount of Vicodin he claimed he needed.

In addition, a review of the record indicates that Dr. Hower's treatment notes were based for the most part on plaintiff's reports of his symptoms.  It is well-settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility.  Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the

29

claimant's self-reported symptoms" and was not supported by the objective medical evidence); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations  may be disregarded where those complaints have been properly discounted).   Because the administrative law judge properly discounted plaintiff's subjective statements concerning his symptoms as not credible, it follows that he could reject any opinions that were based on those statements.  The administrative law judge gave good reasons for rejecting Dr. Hower's opinion and that there is substantial evidence in the record to support his decision.


D.  Residual Functional Capacity

    Plaintiff contends that the administrative law judge's determination of plaintiff's residual functional capacity was wrong for two reasons.  First, plaintiff argues that the administrative law judge erred in not making a mental residual functional capacity assessment.  In the absence of any evidence that plaintiff had a mental impairment, however, the administrative law judge was not required to make a mental residual functional capacity determination.  20 C.F.R. §§ 404.1520, 404.1520(a).  The administrative law judge included the limitation of performing unskilled work in his hypothetical question to the vocational expert.  However, he was  referring to plaintiff's physical impairment of chronic pain.  The

limitation of plaintiff to unskilled work is based reasonably on Dr. Hower's opinion that plaintiff's chronic pain limited his ability to concentrate and stay on task. Therefore, the administrative law judge did not err in failing to make a mental residual functional capacity assessment for plaintiff.

Second, plaintiff argues that Dr. Steiner's testimony that chronic pancreatitis can cause nausea, vomiting, bloating and gas should have been considered by the administrative law judge in determining plaintiff's residual functional capacity. However, the administrative law judge found that plaintiff's testimony concerning the severity of these symptoms was not credible. As previously discussed, it was reasonable for the administrative law judge to conclude that these symptoms were not so severe as to require unscheduled breaks. Accordingly, he did not have to include these symptoms in determining plaintiff's residual functional capacity.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Todd M. Weichel's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and

close this case.

Entered this 4th day of June, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge